IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| QUENTIN HOLLOWAY,<br>    *Plaintiff* | §<br>§<br>§ | |
| -vs- | §<br>§ | SA-20-CV-01023-XR |
| AUTOMOTIVE PROMOTION<br>CONSULTANTS, LLC,<br>    *Defendant* | §<br>§<br>§<br>§ | |

## ORDER ON MOTION FOR DEFAULT JUDGMENT

On this date, the Court considered the Plaintiff's Motion for Default Judgment against Defendant Automotive Promotion Consultants, LLC. ECF No. 9. After careful consideration, the Court issues the following order.

## BACKGROUND

Plaintiff Quentin Holloway filed his original complaint on August 28, 2020, alleging that Defendant Automotive Promotion Consultants, LLC ("APC") violated Subsection E of the Truth in Lending Act ("TILA"), the Consumer Leasing Act ("CLA"), 15 U.S.C. § 1667, and its implementing regulations, 12 C.F.R. § 1013 *et seq.* ("Regulation M"). ECF No. 1.

On February 26, 2020, Plaintiff entered into a closed-end lease agreement (the "Contract") to lease a 2013 Ford Fusion from Defendant. ECF No. 1-1 at 2. The CLA disclosure statement in the Contract disclosed, *inter alia*, an "Amount Due at Lease Signing or Delivery" of $3,710.00. *Id.* Contrary to the CLA disclosure statement, however, Plaintiff alleges that he did not pay $3,710.00 at the time he signed the lease and took delivery of the vehicle. ECF No. 1 ¶ 29. Instead, he paid only $1,500.00 at the inception of the lease, and Defendant required Plaintiff to pay the balance, $2,210.00, in the form of additional payments that were not included in the payment schedule provided in the CLA disclosure, but were, according to the CLA disclosure, to be paid in

the form of a "payment plan." *Id.* ¶¶ 29–33. Thus, Plaintiff alleges that Defendant overstated the "Amount Due at Lease Signing or Delivery" in violation of 15 U.S.C. § 1667a(2) and 12 C.F.R. § 1013.4(b), and that, as a result, Plaintiff was confused about his payments and the true cost of the lease he was entering. ECF No. 1 ¶¶ 21–34. Plaintiff seeks statutory damages under the CLA, actual damages, reasonable attorney fees and costs, and pre-judgment and post-judgment interest. *Id.* ¶ 36.

On November 6, 2020, Plaintiff filed a Notice of Service of Complaint indicating that Plaintiff had attempted to serve Defendant via process server at the address on file with the Texas Office of the Comptroller, but was unsuccessful because Defendant had failed to maintain a statutory agent at the relevant addresses. ECF No. 4. Thus, Plaintiff served Defendant via the Texas Secretary of State in accordance with TEX. BUS. ORGS. CODE § 5.251(1)(B) and TEX. BUS. ORGS. CODE § 5.252, by mailing his summons, complaint, and associated initiating documents to the Texas Secretary of State on October 21, 2020. *Id.* On November 9, 2020, the Secretary of State forwarded the summons and complaint to Defendant by certified mail, return receipt requested. ECF No. 6-1 at 2.

Though its answer was due on November 30, 2020, Defendant has failed to file an answer or other responsive pleading, request an extension of time in which to do so, or otherwise appear in this action. Plaintiff moved for entry of default against Defendant on December 7, 2020, which the clerk entered on the same date. ECF Nos. 7, 8. Plaintiff now moves for default judgment against Defendant. ECF No. 9.

## DISCUSSION

### I. Legal Standard

Pursuant to Rule 55(a), a default judgment is proper "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." FED. R. CIV. P. 55(a). After a default has been entered and the defendant fails to appear or move to set aside the default, the court may, on the plaintiff's motion, enter a default judgment. FED. R. CIV. P. 55(b)(2). However, in considering any motion for default judgment, a court must examine jurisdiction, liability, and damages. *Rabin v. McClain*, 881 F. Supp. 2d 758, 763 (W.D. Tex. 2012). The Court examines each in turn.

### II. Analysis

#### A. Jurisdiction

"[W]hen entry of default is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V Viktor Turnakovskiy*, 242 F.3d 322, 324 (5th Cir. 2001).

##### 1. Subject-Matter Jurisdiction

A federal court has subject matter jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Such federal-question jurisdiction extends to cases in which a "well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808 (1988).

In this case, the Plaintiff's action was brought in federal court pursuant to a claim arising under the TILA. 15 U.S.C. § 1601 *et seq.* Thus, Plaintiff asserts a claim involving a federal question, thereby allowing this Court to exercise federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331. *Fairley v. Turan-Foley Imports, Inc.*, 65 F.3d 475, 482 (5th Cir. 1995) (holding a district court had subject matter jurisdiction to consider a TILA claim); *Belay v. Aegis Wholesale Corp.*, No. A-17-CV-545-LY-ML, 2018 WL 1833250, at *2 (W.D. Tex. Jan. 26, 2018) (concluding that the plaintiff's TILA claim provided federal subject matter jurisdiction).

### *2. Personal Jurisdiction*

The Court has personal jurisdiction over defendants personally served with process within the state in which this Court sits. *See Educ. Mgmt. Servs., LLC v. Tracey*, 102 F. Supp. 3d 906, 911 (W.D. Tex. 2015) ("[T]he Fifth Circuit has recognized, '[f]ederal courts may . . . always assume jurisdiction over a defendant in any action where there is personal, in-state service of process.'" (quoting *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 n.2 (5th Cir. 2006))). The Federal Rules provide for service of process by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." FED. R. CIV. P. 4(e)(1). Because this Court sits in the Western District of Texas, it will look to Texas authority for service of process.

Service of a business entity via the Texas Secretary of State is authorized by Texas law where "the registered agent of the entity cannot with reasonable diligence be found at the registered office of the entity." TEX. BUS. ORG. CODE § 5.251(1)(B). "Reasonable diligence" has been defined by Texas courts of appeals. The courts have held that reasonable diligence does not require the process server "to attempt to find the registered agent at any other address than the address for the registered office." *BLS Dev., LLC v. Lopez*, 359 S.W.3d 824, 827 (Tex. App.—Eastland 2012, no

4

pet.). Reasonable diligence does not require a plaintiff "to ascertain the names of and serve [a corporation's] officers or find [the registered agent's] new address and telephone number." *Liberty Label Co., Inc. v. Morgan Adhesives Co.*, No. 04–04–00279–CV, 2005 WL 1475332, at *1 (Tex. App.—San Antonio June 22, 2005, no pet.) (mem. op). Rather, it is the "[corporation's] responsibility to notify the Secretary of State of a change to either its registered agent or his address." *Id.*

Service of process on the Secretary of State is accomplished by delivering duplicate copies of the process and any required fee. TEX. BUS. ORG. CODE § 5.252. After service on the Secretary of State, the Secretary forwards the process to the corporation by certified mail, return receipt requested. *See id.* § 5.253. A certificate by the Secretary of State as to service conclusively establishes that process was served. *See Campus Invs., Inc. v. Cullever*, 144 S.W.3d 464, 466 (Tex. 2004) (per curiam) (default judgment affirmed following substituted service on Secretary of State where corporation failed to update addresses for its registered agent and office and did not receive certified mail from Secretary of State).

Here, Plaintiff attempted to serve APC at its registered address at 7007 W US Highway 90, San Antonio, Texas 78827, on September 18, 2020. *See* ECF No. 4-1 at 2. However, the process server found that the property was vacant, and an on-site worker indicated that it was an empty lot. *Id.* Plaintiff has also demonstrated that on three separate occasions—September 30, 2020, October 5, 2020, and October 10, 2020—Plaintiff's process server unsuccessfully attempted service upon APC's registered agent, Michael Schiro, at APC's office located at 10822 Fredericksburg Road, San Antonio, Texas 78240. ECF No. 4-2 at 2. Other employees at the office confirmed that Mr. Schiro was employed by APC but indicated that he was "hardly ever" in the office on Fredericksberg Road because he lived approximately 45 minutes away. *Id.*

5

The Court is satisfied that Plaintiffs' four attempts at service constitute reasonable diligence and that substitute service under § 5.252 was appropriate under these circumstances. *See Ingram Indus. v. U.S. Bolt Mfg.*, 121 S.W.3d 31, 34 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (one attempt to serve process can be sufficient to show reasonable diligence); *G.F.S. Ventures, Inc. v. Harris*, 934 S.W.2d 813, 816–17 (Tex. App.—Houston [1st Dist.] 1996, no writ) (same); *Collective Interests, Inc. v. Reagan Nat. Advert.*, No. 03–08–00283–CV, 2010 WL 2977458, at *3 (Tex. App.—Austin July 29, 2010, no pet.) (two attempts to serve the defendant entity before resorting to substituted service constituted reasonable diligence).

Plaintiff properly effected substitute service of process on the Secretary of State in accordance with Texas law. Plaintiff filed a certificate by the Secretary of State indicating that, on November 9, 2020, the summons and complaint were forwarded to Defendant at its registered address—7007 W US Highway 90, San Antonio, Texas 78227—by certified mail, return receipt requested. ECF No. 6-1 at 2. Under Texas law, this certificate conclusively establishes that process was served. *See Campus Invs., Inc.*, 144 S.W.3d at 466. Accordingly, the Court concludes that it has personal jurisdiction over the parties to this case.

  **B. Liability**

With regard to liability, the entry of default by the Clerk of the Court causes all well-pleaded allegations of fact related to liability to be deemed admitted. *Jackson v. FIE Corp.*, 302 F.3d 515, 521, 524–25 (5th Cir. 2010). Although the Court must accept these allegations as true, the default alone does not warrant entry of default judgment; rather, the Court retains the burden of ascertaining whether the well-pleaded facts state a claim for which relief may be granted. *Nishimatsu Constr. Co. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975) (noting that "a default is not treated as an absolute confession by the defendant of his liability and of the

plaintiff's right to recover"; rather, "[t]here must be a sufficient basis in the pleadings for the judgment to be entered"); *see also Tyco Fire & Sec., LLC v. Alcocer,* 218 F. App'x 860, 863 (11th Cir. 2007) (applying Texas law).

Thus, before awarding damages to Plaintiff, the Court must determine if the pleadings, "taken as true due to the default, actually state a substantive cause of action," and whether the relief sought has a "sufficient basis in the pleadings." *Nishimatsu Constr. Co.,* 515 F.2d at 1206.

The primary purpose of the TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair billing . . . practices." 15 U.S.C. § 1601(a); *Chase Bank USA, N.A. v. McCoy,* 562 U.S. 195, 198 (2011*); Mendez v. Aaron Rents, Inc.*, No. SA-03-CA-687-JWP, 2006 WL 8434185, at *2 (W.D. Tex. Sept. 7, 2006). Given that purpose, "the Act has been found uniformly to be remedial in nature and thereby liberally and broadly construed in favor of the consumer." *Travis v. Tr. Co. Bank*, 621 F.2d 148, 151 (5th Cir. 1980). Liability under the TILA "flows from even minute deviations from the requirements of the statute." *Charles v. Krauss Co.*, 572 F.2d 544, 546 (5th Cir. 1978). "[O]nce a court finds a violation, no matter how technical, it has no discretion with respect to the imposition of liability." *Grant v. Imperial Motors*, 539 F.2d 506, 510 (5th Cir. 1976).

Because lease financing had become recognized as an alternative to credit financing and installment sales contracts, Congress enacted the CLA as an amendment to the TILA, and thereby extended the TILA's credit disclosure requirements to consumer leases to "enable comparison of lease terms with credit terms where appropriate." 15 U.S.C. § 1601(b). The CLA requires lessors of personal property subject to its provisions to make specified disclosures in lease agreements. *See* 15 U.S.C. § 1667a (consumer lease disclosures). Thus, "[t]he CLA, like the rest of the TILA,

7

'is a disclosure rather than regulatory statute.'" *Clement v. Am. Honda Fin. Corp.*, 145 F. Supp. 2d 206, 209 (D. Conn. 2001) (quoting *Turner v. Gen. Motors Acceptance Corp.*, 180 F.3d 451, 454 (2d Cir. 1999)). The CLA disclosures must be made in a "clear and conspicuous manner," 15 U.S.C. § 1667a(2), which means that they should be "readily understandable." Official Staff Commentary to Regulation M, 12 C.F.R. § 1013.3(a), Supp. I. A lessor who fails to comply with the disclosure requirements of § 1667a is liable to the lessee for damages. *See* 15 U.S.C. §§ 1667d(a) (incorporating the TILA's civil liability damages provisions as set forth in 15 U.S.C. § 1640). Accordingly, the TILA's "strict liability standard attaches to violations of CLA disclosure requirements as well." *Gaydos v. Huntington Nat. Bank*, 941 F. Supp. 669, 672 n.2 (N.D. Ohio 1996).

In order to prevail on his CLA claim, Plaintiff must show: (1) that Defendant is a "lessor" as defined by the CLA; (2) that Defendant entered into a consumer lease with Plaintiff; and (3) that Defendant failed to accurately disclose the "Amount Due at Lease Signing or Delivery" to Plaintiff as required by the CLA. 15 U.S.C. § 1667d(a).

By its failure to answer, Defendant has admitted that: "At all relevant times, Defendant, regularly engaged in leasing, offering to lease, or arranging to lease under a consumer lease." ECF No. 1 ¶ 19; *see* FED. R. CIV. P. 8(b)(6). Thus, Defendant is a "lessor" as defined by the CLA. *See* 15 U.S.C. § 1667(3) (defining "lessor" as "a person who is regularly engaged in leasing, offering to lease, or arranging to lease under a consumer lease").

Defendant has also admitted that it entered into the lease agreement attached to Plaintiff's complaint as Exhibit A. *See* ECF No. 1 ¶¶ 23–24; ECF No 1-1. Pursuant to the Contract, Defendant leased a vehicle to Plaintiff for his own personal, family and household use for a period exceeding four months. ECF No 1-1 at 2, 4. Thus, the Contract is a "consumer lease" within the ambit of 15

U.S.C. § 1667(1) (defining a "consumer lease" as "a contract . . . for the use of personal property by a natural person for a period of time exceeding four months, and for a total contractual obligation not exceeding $50,000, primarily for personal, family, or household purposes").

As to whether Defendant failed to accurately disclose the "Amount Due at Lease Signing or Delivery," that element turns on whether the amount disclosed can include deferred payments made under a payment plan and, if so, how such payments should be disclosed under the CLA and Regulation M. The CLA requires lessors to disclose to lessees "[t]he amount of any payment by the lessee required at the inception of the lease." 15 U.S.C. § 1667a(2). Similarly, Regulation M, the CLA's implementing regulation, requires lessors to disclose to lessees, "[t]he total amount to be paid prior to or at consummation or by delivery, if delivery occurs after consummation, using the term 'amount due at lease signing or delivery.'" 12 C.F.R. § 1013.4(b). Regulation M identifies specific items that must be included in this disclosure:

> The lessor shall itemize each component by type and amount, including any refundable security deposit, advance monthly or other periodic payment, and capitalized cost reduction; and in motor-vehicle leases, shall itemize how the amount due will be paid, by type and amount, including any net trade-in allowance, rebates, noncash credits, and cash payments in a format substantially similar to the model forms in appendix A of this part.

12 C.F.R. § 1013.4(b). The official staff commentary to Regulation M provides that a "capitalized cost reduction" ("CCR") is a payment "in *the nature of a downpayment* on the leased property that reduces the amount to be capitalized over the term of the lease." 12 C.F.R. § 1013.3(a), Supp. I. (emphasis added).

The term "downpayment" is not defined in the text of the CLA or Regulation M. Regulation Z defines a "downpayment" as "an amount, including the value of property used as a trade-in, paid to a seller to reduce the cash price of goods or services purchased in a credit sale transaction." 12 C.F.R. § 1026.2(a)(18). Regulation Z further provides that "[a] deferred portion of a downpayment

9

may be treated as part of the downpayment if it is payable not later than the due date of the second otherwise regularly scheduled payment and is not subject to a finance charge." *Id.* Thus, the TILA and Regulation Z specifically contemplate the use of deferred downpayments, often referred to as "pick-up payments" in consumer credit transactions. The CLA and Regulation M, on the other hand, do not.

Still, to the Court's knowledge, there is no basis in the CLA, Regulation M, or caselaw to conclude that a lessee cannot finance all or a portion of the CCR through a credit transaction.[1] Indeed, the official staff commentary to Regulation M clarifies that the amount due at lease signing or delivery can be paid using "non-currency payments" so long as the form of payment is included in the CLA disclosure. *See* Official Staff Commentary to Regulation M, 12 C.F.R. § 1013.4(b), Supp. I ("[A] lessor may add a line item under the column 'how the amount due at lease signing or delivery will be paid' for non-currency payments such as credit cards."). A CCR financed through a credit transaction with the lessor would seem to the Court to qualify as such a non-currency payment that must be included as a separate line item under the column indicating how the amount due will be paid, as required under 12 C.F.R. § 1013.4(b).

Here, the CLA disclosure statement in the Contract disclosed an "Amount Due at Lease Signing or Delivery" of $3,710.00. *See* ECF No. 1-1 at 2. As Section 1013.4(b) of Regulation M requires, the disclosure indicates how the amount due was to be paid in separate line items: $1,500.00 was paid in cash, and the remaining $2,210.00 was to be paid in the form of a payment plan. *Id.* Plaintiff's Complaint contains a single count, alleging that Defendant failed to accurately

---

[1] Furthermore, there are a variety of reasons that a consumer may find it beneficial to enter into a separate credit agreement to maximize the CCR at the inception of a lease. Such an arrangement minimizes the size of individual lease payments and can help a consumer build credit history. It may also reduce the overall cost of the lease. For example, a lessor hoping to collect payments of both rent and interest may offer incentives to lessees who finance a portion of the "downpayment" through the lessor. If the credit agreement does not contain a prepayment penalty, however, the lessee can avoid paying any interest on the loan by immediately paying off the balance, while still enjoying the incentives offered by the lessor and smaller payments under the lease.

disclose the "Amount Due at Lease Signing or Delivery" in violation of 15 U.S.C. § 1667a(2) and 12 C.F.R. § 1013.4(b). ECF No. 1 ¶ 35. However, because the Court concludes that neither the CLA nor Regulation M prohibits financing all or a portion of the amount due, so long as the financing is disclosed as a form of "non-currency payment," the Court finds that the CLA disclosure in the Contract does not violate the requirements of 15 U.S.C. § 1667a(2) and 12 C.F.R. § 1013.4(b). Thus, the allegations in the Complaint, even taken as true due to the default, fail to state a substantive cause of action for which relief may be granted, and Plaintiff's motion for default judgment must be denied. *Nishimatsu Constr. Co.,* 515 F.2d at 1206.

The Court does not doubt that, because nothing in the Contract indicates how or when the $2,210.00 non-currency payment was to be repaid, "Plaintiff was confused about his payments and the true cost of the lease he was entering." ECF No. 1 ¶ 34. Indeed, Defendant's failure to include these additional payments in the payment schedule provided in the CLA disclosure may very well violate other provisions of the CLA and Regulation M. Specifically, 15 U.S.C. 1667a(9) requires lessors to disclose "[t]he number, amount, and due dates or periods of payments under the lease and the total amount of such periodic payments." Staff commentary to Regulation M clarifies that this disclosure includes "all payments that are made at regular or irregular intervals and generally derived from rent, capitalized or amortized amounts such as depreciation, *and other amounts that are collected by the lessor at the same interval(s)*, including, for example, taxes, maintenance, and insurance charges." 12 C.F.R. § 1013.4(c), Supp. I (emphasis added). Given Plaintiff's failure to allege a violation of 15 U.S.C. 1667a(9) or 12 C.F.R. § 1013.4(c) or any facts concerning the repayment of the lessor-financed portion of the CCR that would support such a violation, however, the Court cannot grant Plaintiff's motion for default judgment on this theory of liability. Plaintiff may file an amended complaint, alleging violations of the CLA and

11

Regulation M based on Defendant's failure to include periodic payments toward the $2,210.00 loan in the payment schedule, and then serve the amended complaint on Defendant.

## CONCLUSION

Accordingly, Plaintiff's motion for default judgment (ECF No. 9) is **DENIED**.

It is so **ORDERED**.

**SIGNED** this 3rd day of May, 2021.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE